The Law Offices of Leon Ozeran
Leon Ozeran, Esq., CA Bar No.: 296071
8200 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Tel: (310) 461-3730
EFax: 424-302-0490
Attorney for Plaintiff
ALLEN OZERAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN OZERAN<br>          Plaintiff,<br>     vs.<br><br>BMW of NORTH AMERICA,<br>LLC; BMW FINANCIAL<br>SERVICES NA, LLC; and<br>DOES 1-20 inclusive;<br><br>          Defendants.<br>_____ | **Case Action No.**:<br><br>**COLLECTIVE AND CLASS ACTION**<br><br>**JURY DEMAND**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:**<br>1.    INTERFERENCE WITH POTENTIAL ECONOMIC ADVANTAGE;<br>2.    MISREPRESENTATION & DECEIT;<br>3.    UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONAL CODE §17200;<br>4.    BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING;<br>5.    UNJUST ENRICHMENT. |

## **INTRODUCTION**

1.    Plaintiff Allen Ozeran ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorney, hereby brings this Collective and Class Action Complaint against Defendants BMW of NORTH AMERICA, LLC; BMW FINANCIAL SERVICES NA, LLC; and DOES 1-20 (collectively, "Defendants") to seek redress for Defendants' deceptive and unfair practices as it relates to their car lease terms.

2.    From October 1, 2021, contrary to their own long-standing policy, Defendants implemented a policy of not honoring payoffs funds received from third-party dealers that entered into contracts with BMW lessees to purchase their vehicles.  It is believed and therefore alleged that Defendants enacted such practice due to drastically reduced inventory of used cars in BMW's dealers' lots and increased values of the used cars in excess of the residual value of the leased vehicles indicated in lease agreements as Payoff amounts. Thus, it is also alleged that Defendants engaged in the deceptive and fraudulent practice of coercing and forcing lessees to surrender their vehicles to BMW at their lease-ends, to deprive lessees of capital gain due to appreciation of the leased vehicles.

## **PARTIES**

3.    At all relevant times, Plaintiff Allen Ozeran is a resident of State of California. He leased a 2019 BMW X3 ("Plaintiff's vehicle") from the Defendants.

4.    Defendant BMW North America, LLC ("BMW NA") is a Delaware limited liability company with its principal place of business located in Woodcliff Lake, New Jersey.

5.    Defendant BMW Financial Services NA, LLC ("BMW Financial") is a Delaware limited liability company with its principal place of business located in Woodcliff Lake, New Jersey.

6.     Defendant BMW FINANCIAL SERVICES NA, LLC is a financial arm of the BMW NA, and is a servicer for BMW NA.  Upon the expiration of the Lease Agreement for each specific vehicle, the final Pay-off amount shall be sent to the BMW FINANCIAL SERVICES NA, LLC.

7.     All the communications related to the payoff instructions and the funds for final pay-off amounts are sent to BMW Financial.

8.     All acts and omissions of Defendants and their employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties and therefore defendants responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

9.     Defendants, including BMW of NORTH AMERICA, LLC and BMW FINANCIAL SERVICES NA, LLC, were agents or employees of their co-defendant BMW of NORTH AMERICA, LLC and were acting within the scope and course of their agency and employment, and with the permission and consent of the other co-Defendants, and that said Defendants, and each of them, is responsible in some manner for the events and happenings herein referred to or otherwise proximately caused the acts, omissions or events hereinafter alleged.

10.   Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise of Defendant issued herein as Does 1 through 20.  Plaintiff will seek to leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

11.   All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

12.   Each Defendant whether actually or fictitiously named herein was the principal, agent (actual or ostensible) or employee of each other Defendant and in acting as such principal or within the course and scope of such employment or

agency, took some part in the acts and omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein.

## JURISDICTION AND VENUE

13.   BMW is one of the largest car manufacturers in the world. It has thousands of dealerships throughout the world including multiple dealerships in California.  Thus, Defendants have purposefully availed themselves of the privilege of conducting activities in the state of California and have established minimum contacts sufficient to confer jurisdiction over them; and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

14.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a).

15.   The matter in controversy exceeds $75,000.00, exclusive of interest and costs; and Plaintiff and Defendant are citizens of different states.

16.   The claims asserted by the putative class, when aggregated according to 28 U.S.C. § 1332(d)(6), exceeds the amount of $5,000.000 as required by 28 U.S.C. § 1332(d)(2).

17.   At least one member of the California Class is a citizen of a State different from at least one Defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

18.   The number of members of all putative classes alleged exceeds 100 as required by 28 U.S.C. §1332(d)(5)(B).

19.   The primary Defendants are not States, State officials, or other governmental entities under the definition of 28 U.S.C. § 1332(d)(5)(A).

20.   Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

21.   This Court has a supplemental jurisdiction over state claims pursuant 28 U.S.C. §1367 because the claims arise from a common nucleus of operative facts and thus adjudication of both state and federal claims furthers the interests of judicial economy.

22.   Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and the venue is proper.

## GENERAL ALLEGATIONS

23.   It is well-known fact that for the last year, due to inflation and difficulties with manufacturing and delivery of new cars, the demand for pre-owned (used) cars has risen dramatically.  As a result of rising demand, the value of used cars has gone up.  Indeed, leased vehicles' values have begun to exceed the residual values specified in original car lease agreements. Such increase in residual value has created a situation where lessees have found themselves in possession of a vehicle whose market value is significantly more than the amounts owed on their respective lease, as calculated by Civil Code Section 2987.  As a result of this increased equity, lessees are recognizing that they can trade-in or sell their vehicle for a significant profit.

24.   Plaintiff's case is one such case.  For example, in 2019 the residual value of his car - BMW X3 stated in his lease contract was $27, 078.05.  However, due to the above-mentioned factors, the market value of his used BMW X3 was determined to be in October of 2021 approximately $40,000.00.  Thus, Plaintiff had about $13,000 appreciation (equity) on his vehicle and it was more profitable for him to sell it on the open market instead of returning it to the BMW dealer for a lesser residual.

25.   In a closed-end consumer vehicle lease, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease.

26.   Due to the shortage of used cars, car dealers, including BMW dealers, are in desperate need of used cars for sale as their lots are practically empty.  Despite the fact that other Dealers are willing to offer a much higher price than the residual value

1    specified in car lease agreements, the BMW Dealers are will not offer any higher

2    amount than specified in Lease Agreements.  To make the case even more egregious,

3    BMW dealers charge lessees additional fees such as surrender fees and other fees for

4    damage to the car, such as bumpers, wheels, tires, scratches, etc.

5        27.  To increase inventory for BMW dealers, and prevent inventory from reaching

6    the third party dealers, Defendants concocted a scheme to stop lessees from selling

7    their vehicles to third-party dealers at the end of the lessees' lease.  Defendants are

8    aware of the difficultly many lessees may have in putting together needed funds

9    sufficient to satisfy lease pay-offs, particularly given the devastating effects of

10   COVID-19 on jobs and the economy.  Defendants, therefore, enacted a new "policy"

11   that would make it nearly impossible for lessees to sell their vehicles to third-party

12   dealers at the end of their leases.

13       28.  As stated above, many lessees do not have their own funds to pay off the

14   residual balance at the end of the lease ("payoff").  Thus, Lessees work with third-

15   party dealers to sell their vehicles to the third-party dealers, who then provided the

16   needed pay-off amount to Defendants directly.  Cal. Vehicle Code § 11709.4 sets

17   forth the manner in which a licensed motor vehicle dealer is supposed to "purchase or

18   obtain a vehicle in trade in a retail sale…[which] is subject to a prior credit or lease

19   balance" including, amongst other things, that the dealer must "tender[s] the agreed-

20   upon amount as provided in the written agreement to the lessor…or the legal owner

21   reflected on the ownership certificate, or to the designee of that lessor or legal owner

22   within 21 calendar days of purchasing or obtaining the vehicle in trade."  (Cal.

23   Vehicle Code § 11709.4(a)(1).

24       29.  Prior to October 1, 2021, Defendants accepted these third-party dealer

25   payments without any objections that such practice violated any state or DMV's

26   laws.  Such practice was well-known and continued for years without objection from

27   any Defendant.

28

30.   As of October 1, 2021, Defendants created a plan to mislead lessees who comprise the Class by providing information orally and in writing stating that various unidentified state laws and provisions in Class Members' Lease Agreements, Defendants were mandated to not accept funds from third-party dealers.  The Class was and continues to be put in a position of not being able to get satisfy the lease payoff amount, and must return their vehicles to Defendants, incurring additional costs and being deprived of the benefit of the appreciation of their vehicles.

31.   In this case, the Culver Toyota dealer (TPD) agreed to pay Plaintiff's payoff amount in order to buy Plaintiff's car.  However, when on October 14, 2021, the Culver contacted the Defendants requesting the payoff instructions, it was rejected as a non-BMW dealer.

32.   Defendants were therefore on notice of the relationship between lessees and third-party dealers but nonetheless decided to interfere to gain an unfair market advantage.

33.   All other Lessees (the Class) are in similar situations and had an opportunity to realize significant profit by selling their cars to any third party, but were prevented from receiving benefits of their contract by the BMW newly enacted rules prohibiting sale to the "Third Party Dealers." (TPDs)

34.   As stated above, based on their decade-long previous experience, Defendants should have known that their intentional actions were false, fraudulent, and deceptive.   Cal. Civil Code § 2987 discusses a "…lessee's right to early termination of lease contract; conditions; notice."

35.   Pursuant to Cal. Civil Code § 2987, consumers have the right to terminate their lease early in connection with the purchase or lease of another vehicle, and when doing so, it does not specify who is entitled to provide funds or specifically excludes any party (including TPD) from providing such funds as long as the money owed to the lessor is the payoff amount of the lease.

36.  Defendants have colluded with each other to engage in the wrongful conduct alleged herein.  Defendants have done this for their mutual benefit that included that only BMW brand dealerships having access to BMW used vehicles; only BMW brand dealerships can sell BMW products and they will be financed via BMW Financial prior to sale which results in more transactions for BMW brand vehicles, which ultimately will make money for all Defendants.

37.  Defendants adopted such a deceptive scheme to strong-arm and coerce lessees (i.e. consumers) to bring their cars to Defendants and/or BMW associated dealers that will then re-sale the same cars and keep the profit.

## PLAINTIFF'S EXPERIENCE

38.  Plaintiff had a lease for his BMW Vehicle that ended on October 20, 2021.

39.  Due to the inability to raise the funds needed to pay off the lease, which at that time was $27,078.05, Plaintiff entered into a valid contractual agreement with Culver City Toyota Dealership (the "Culver Dealer") for the purchase of his vehicle at the agreed price of $31.000.00.  Plaintiff received a firm offer with the copy of the check that would be issued in his name when the pink slip was delivered.  Plaintiff's agreement with the Culver Dealer was not just an estimate - Plaintiff and the Culver Dealer entered into a signed and enforceable binding agreement stating that the Culver Dealer would buy Plaintiff's vehicle without any additional conditions for $31,000.00, which was about $3,025.00 higher than a residual value.

40.  Following a routine procedure, on or about October 15, 2021, the Culver Dealer requested the payoff instructions from Defendant BMW Financial, seeking customer payoff information.  BMW Financial, however, refused to provide payoff instructions to the Culver Dealer, stating that according to Defendants' policy, as of October 1, 2021, third-party dealers were not permitted to provide payoff funds on behalf of lessees as specified in Defendants' October 14, 2021 letter.

41.   Following Defendant's rejection, on or about October 15, 2021, the Culver Dealer rescinded the purchasing contract with Plaintiff solely due to Defendants' refusal to accept funds from the Culver Dealer.  Accordingly, the contract between Plaintiff and the Culver Dealer was canceled.

42.   As the expiration of Plaintiff's lease was only 5 days away, on October 20, 2021, Plaintiff was pressured to surrender his vehicle to a BMW dealer, or risk this loan defaulting.

43.   To add insult to injury, Plaintiff was also facing additional charges from the BMW dealer such as (1) vehicle surrender fees of $350; (2) bumpers scratches - $800; (3) wheels (rims) scratches - $400; (4) tires wear - $1,600; and more.

44.   Plaintiff would incur additional charges, in excess of $3,000, for surrendering his vehicle, rather than receiving a benefit of more than $3,000 in profit but for Defendants' new policy.

45.   Defendants enacted such a policy on October 1, 2021.  Prior to October 1, 2021, Defendants' had a long-standing policy of accepting pay-off payments from any party that provided funds at the direction of the lessee.

46.   On or about October 14, 2021, Defendants sent a letter to Plaintiff stating that, according to Motor Vehicle Lease Agreement and/or state regulations, "…the title can only be transferred to the original lessee or a BMW Center and thus, BMW will not honor payoffs received from third-party dealerships."

47.   However, as stated above, no such regulations exist.

48.   Plaintiff relied on Defendants' false and misleading representations and entered into the contract with a private party to sell his car for the same price of $27,078.05 as in the Lease to avoid additional charges mentioned above.  As a result, Plaintiff suffered damages by forfeiting profit from his car's appreciation.

49.   As stated above, the new policy was enacted with the purpose to coerce lessees to return their leased vehicles at the end of their lease terms to BMW dealers

or trade-in also only at BMW dealers.  Notably, only third-party dealers were excluded from providing funds; there was no prohibition as to any other third parties.

50.  It was an intentionally deceptive strategy directed to increase Defendants' inventory of used cars that harmed Plaintiff and those similarly situated.

51.  Plaintiff continues to desire to lease vehicles from Defendants and is at risk of relying on the same representations regarding the lease end terms, as well as being again denied the value of his leased vehicle.

## TOLLING

**A. Discovery Rule Tolling**

52.  Class Members had no way of knowing about Defendants' deceptive practices concerning the truthfulness of Defendants' statements of state and contractual prohibitions of the third-party dealers.

53.  Within the period of any applicable statutes of limitation, Plaintiffs and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were hiding their true practices. All applicable statutes of limitation have been tolled by the operation of the discovery rule.

**B. Fraudulent Concealment Tolling**

54.  All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

55.  Instead of disclosing their true practices, Defendants misrepresented that there were state laws and/or provisions that prohibit pay-offs by third-party dealers.

**C. Estoppel**

56.  Defendants were under a continuous duty to disclose to Plaintiff and other Class Members the true character, quality, and nature of their pay-off policy, including their claims that only BMW dealers are eligible to provide payoff or trade in lessees' vehicles.

57.   Defendants knowingly, affirmatively, and actively concealed true facts from consumers.

58.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

**EQUITABLE RELIEF**

59.   Absent an equitable injunction enjoining Defendants' conduct alleged herein, Plaintiff, the Class, and the public will be irreparably harmed and denied an effective and complete remedy because they face the real and tangible threat of future harm emanating from Defendants' ongoing conduct which cannot be remedied with monetary damages.

60.   Plaintiff does not know at this juncture whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time, or whether the Court will find that any such model adequately compensates Plaintiff's and the Class's losses. Accordingly, Plaintiff sets forth alternate claims for legal damages and equitable restitution.

61.   Similarly, as set forth herein, Defendants' material deceit and misrepresentations made in regards to the pay-off instructions are ongoing and, accordingly, represent an ongoing threat to Plaintiffs, the Class, and members of the general public who have not yet (but who are likely to) come into contact with Defendants' misrepresentations, and who risk becoming injured thereby. Plaintiff seeks, on behalf of himself, the Class, and the general public, an injunction prohibiting Defendants from refusing to accept funds from third-party dealers. Specifically, Plaintiff seeks the Court's determination that anyone, including third-party dealers, can provide the funds to the BMW Financial LLC as long as a pay-off amount is provided in full and timely.

## CLASS ACTION ALLEGATIONS

**Class actions:**

62.  Plaintiff brings this action as a class action on his own behalf and on behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs, and attorneys' fees.

63.  Plaintiffs brings this class action lawsuit on behalf of themselves and proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent the following group of similarly situated persons (the "Class"), defined as follows:

> **All persons who leased a BMW vehicle with a lease-end date after October 1, 2021.**

64.  The members of the Class are so numerous that the joinder of all members is impracticable. On information and belief, there are in excess of a thousand members of the Class.  Discovery will reveal, through Defendants' records, the approximate number of Class members.  However, the class is estimated to be greater that 100 individuals and the identity of such membership is readily ascertainable and the total damages will exceed $5,000.000.

65.  Common questions of law and fact exist as to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

   i.      Whether Defendants' policy of excluding third-party dealers from providing pay-off funds caused Plaintiffs and the Class to suffer economic harm;

   ii.      Whether Defendants violated California Business and Professions Code §§ 17200, *et seq.*;

   iii.      Whether Defendants' misrepresentations and deceit are material to reasonable consumers;

iv.     Whether Plaintiffs and the Class are entitled to restitution or damages and if so, the court may establish that the appropriate measure of damages is the difference between the Pay-Off amount and the Fair Market Value of the Vehicle as determined by authorized appraisals;

v.     Whether Defendant's actions violate Federal and California laws invoked herein;

vi.     Whether Defendant engaged in the behavior knowingly, recklessly, or negligently; and,

vii.     Whether Class and Subclass members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

66.   Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

67.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the Defendants.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

68.   The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

69.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

70.   The Class is readily definable and prosecution as a class action will eliminate the possibility of duplicative litigation, \ while also providing redress for claims that would otherwise be too small to support the expense of individual complex litigation.

71.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by

individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendants would likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

72.   Defendant was unjustly enriched to the detriment of the Class, entitling the Class to disgorgement of all monies resulting therefrom;

73.   The Class is entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under California law.

74.   Plaintiff's claims are typical of the Class because all members of the Class were injured, and may continue to be injured, in the same manner by Defendants' unlawful, anticompetitive and inequitable methods, acts, and practices.

75.   Unless addressed, Defendants' practices will continue and the Class will further be harmed in the future.

76.   The class damages are similar and ubiquitous.

## **FIRST CAUSE OF ACTION**

**Interference with Potential Economic Advantage and Contractual Relations**

77.   Intentional interference with contractual relations occurs when a party intentionally and by improper means damages the Plaintiff's contractual or other business relationships.

78.   In this case, Plaintiff entered into a valid contractual agreement with the Culver Dealer for the purchase of his vehicle at the agreed price of $31.000.00.

79.   On or about October 14, 2021, when the Culver Dealer requested the payoff accounting from BMW Financial, BMW Financial refused to provide it to the Culver Dealer stating that according to Defendants' policy, starting from October 1, 2021, third-party dealers were not permitted to buy-out leased vehicles on behalf of the vehicle lessees.

80.   Following such rejection, on or about October 15, 2021, the Culver Dealer rescinded the purchasing contract with Plaintiff and the deal was canceled.

81.   Improper means are actions that are independently actionable such as violations of federal or state law or unethical business practices including misrepresentation (among others).

82.   Plaintiff had an economic relationship with the Culver Dealer to sell his car for $31,000.00.

83.   The Culver Dealer contacted the Defendants with the specific request for a payoff amount required by Plaintiff's Lease Agreement.  The Culver Dealer told Defendants that it had an existing contract with the Plaintiff to purchase for his vehicle, putting Defendants on notice of the relationship.

84.   Defendants enacted a newly designed policy specifically designed to disrupt such practices and relationships.

85.   Due solely to such policy, the existing contract between Plaintiff and the Culver Dealer was canceled.

86.   Because the sale did not happen, Plaintiff suffered economic harm.

87.   Defendants acted tortuously, intentionally, improperly, using deceit and coercion.

88.   It was reasonably foreseeable to Defendants that acting in such a manner would expose people, such as the Plaintiff and Class to harm. And in fact, Plaintiff and others similarly situated suffered harm.

## SECOND CAUSE OF ACTION

### Misrepresentation, Deceit

89.   Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

90.   Defendants made false representations related to the issue as to why lessees' vehicles could only be returned to a BMW dealer and why BMW Financial would not accept a third-party dealer's lease payoff payment.

91.   Instead of disclosing their true intentions, Defendants falsely represented that there were state laws and/or lease agreement provisions prohibiting pay-offs by third-party dealers.

92.   BMW Financial in its letter dated October 14, 2021, made representations that:

> (1)    Under the terms of your ***Motor Vehicle Lease Agreement***, you may either purchase your leased vehicle or return or trade-in to an authorized BMW Center.  BMW Financial will not honor payoffs received from third-party dealerships."
>
> (2)    "In the event, a payoff is received from third-party dealerships, BMW Financial Services will return the payment by mail to the original sender…"
>
> (3)    "***Due to State regulations***, the title can only be transferred to the original lessee or a BMW Center."
>
> *Letter Customer Payoff Information Oct. 14, 2021*

93.   In fact, those representations were false and Defendants knew the statements were false when they sent they made the representations.  There are no provisions in BMW's *Motor Vehicle Lease Agreement* that exclude third-party dealers from providing payoffs funds, nor are there "state regulations" that exclude lease payoff payments by third-party dealers.  Noticeably, Defendants did not provide any specific references such as sections of the Lease Agreement or applicable state statutes supporting any of their statements.

94.   Defendants' policy intentionally is not neutral and purposely favors BMW dealers at expense of Plaintiff's and the Class' interest.  Defendants knew that the representations regarding the Lease Agreement and/or state requirements were false

when agents issued the pay-off demands, or Defendants made the representation recklessly and without regard for its truth.  Plaintiff and class members relied upon Defendants' misrepresentations, thus suffering damages.

95.   Defendant's payoff instructions were intentionally deceptive so as to coerce lessees to return or trade-in their vehicles exclusively to BMW dealers.

96.   Particularly in the midst of the COVID-19 pandemic, many consumers have had difficulty making ends meet and it is highly likely that many consumers do not have, or cannot gather funds sufficient to pay their lease payoff.  The third-party dealers provided Plaintiff and the Class an opportunity to obtain funds sufficient to satisfy the lease payoff.  When Defendants denied such a possibility, Defendants effectively coerced the Class to turn in their leased vehicles to a BMW dealer in order to not to go into default, jeopardizing their credit.  It is an intentionally deceptive strategy directed to increase BMW's market of used cars in competition with the other dealers when inventory is extremely low and prices went up dramatically.

97.   Defendants intended that Plaintiff and the Class rely on Defendants' representations regarding lease payoff.

98.   Plaintiff and the Class detrimentally relied on Defendants' deceit and were harmed by that.

99.   Defendants' actions were a substantial factor in causing such harm.

## THIRD CAUSE OF ACTION

### California Unfair Competition Law (UCL)

**Unfair Business Practices in Violation of Business & Professional Code §17200.**

100. Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

101. Plaintiff and the class suffered an economic injury due to Defendants newly enacted policy starting from October 1, 2021, and continuing thereafter.

102. Under UCL, a plaintiff has standing by establishing he or she surrendered in a transaction more or acquired in a transaction less than he or she otherwise would have.  Cal. Bus. & Prof. Code § 17204.  Here, Plaintiff and the Class were in a position to receive the benefit of the appreciation of their leased vehicle but were wrongly deprived of such benefit by Defendants.

103. Defendants committed acts of unfair business practice, as defined by sections 17200, *et seq.* of the California Business and Professions Code.

104. The Unfair prong of the UCL creates a cause of action for business practice that is unfair even if not proscribed by some other law.  Here, the Defendants' practice was unfair to Plaintiff and the Class in denying them their right to enjoy the benefit of the appreciation of their leased vehicles.

105. Defendants' aforementioned practices, which Defendants continue to use, to receive significant financial gain, also constitute unlawful competition.

106. The Fraudulent prong: Defendants engaged in the deceptive practice of misleading consumers in order to obtain more cars for inventory.

107. The Unlawful prong: It is unlawful for Defendants to be engaged in the deceptive practice of misleading consumers in order to obtain more cars for inventory.

108. Furthermore, in the letter dated October 14, 2021, describing the payoff procedure, Defendants made misleading and deceitful statements related to alleged state laws and/or Lease Agreement's provisions requiring Plaintiff and Class Members to bring their leased vehicles only to a BMW dealer and allegedly prohibiting the Defendants from accepting payoffs from the third party dealers.

109. Those statements were false and misleading.  Such statements caused Plaintiff and the Class to be deprived of money and/or property to which they had a cognizable claim.

110. Plaintiff and the Class detrimentally relied on statements made by Defendants thus, suffering an injury in fact and economic losses.

111. Business & Professions Code §17200 provides that: "….unfair competition shall mean and include any unlawful or fraudulent business act or practice."  The acts of omissions, misrepresentations, together with practices of deceit by the Defendants, as alleged herein, constitute a continuous and continuing course of conduct of unfair competition by means of unfair; unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, section 17200, *et seq.*

112. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described above.

113. Plaintiff and members of the Class were misled and coerced into surrendering their vehicles to the BMW's dealers, as alleged above.

114. Plaintiff and members of the Class were misled and, because the misrepresentations in payoff instructions were material, presumably believed that their only option for lack of their own funds was to surrender vehicles to the BMW dealer, thus suffering economic damages by losing their profits.

115. Defendants violated the UCL by knowingly and intentionally refusing to allow lessees to sell or "trade-in" their vehicles to licensed vehicle dealers, in violation of Plaintiffs' statutory rights pursuant to Vehicle Code §11709.4 and Civil Code § 2987.

116. An Unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  Here, the Defendants' actions clearly fit under such definition. They coerced the Class to surrender their vehicles to the BMW dealers only, depriving the Class of receiving profit from their vehicles' appreciation.

117. As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading practices in an amount that will be proven at trial.

118. Defendants have been and continue to be unjustly enriched as a result of their wrongful conduct.

119. The Class is accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business practices.

## FOURTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith & Fair Dealing in Contract

120. Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

121. In every contract or agreement, there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

122. Defendants breached the contract by violating the duty to act fairly and in good faith.

123. Defendants are in the business of providing a sale, leasing, and trade-in of vehicles.

124. Plaintiff, and members of the Class, entered into contracts with Defendants to lease vehicles.  At the end of the lease term, Plaintiff and the Class were to receive the right of ownership associated with the unimpeded and absolute right to sell the vehicle to a third party.

125. At the end of the Financial Lease Agreement, Plaintiff and the Class attempted to do all, or substantially all of the significant things that the contract between the parties required.

126. All conditions required for Defendants' performance had occurred, i.e. Defendants should have released the vehicle title pursuant to the Plaintiff's and the Class' direction.

127. Defendants unfairly interfered with Plaintiff's and the Class' right to pay off their lease and sell their vehicles.  Defendants thus breached the implied covenant of good faith owed to Plaintiff and the Class.

128. Plaintiff and the Class were harmed by Defendants' conduct.

## FIFTH CAUSE OF ACTION

### For Unjust Enrichment

129. Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

130. Plaintiff and the Class conferred upon Defendants an economic benefit, like windfall profits resulting from unlawful misrepresentation and coercion of the customers surrendering leases.

131. Defendants' financial benefits resulting from their unlawful and inequitable conduct are economically traceable to forcing the Class to surrender returned vehicles to BMW's dealers.

132. The economic benefit of overcharges and unlawful profits derived by Defendants through depriving lessees of the benefits of selling their vehicles to other dealers at market prices, thus depriving them of rightful profit.  Plaintiff's and the Class' losses were a direct and proximate result of Defendants' unlawful practices.

133. It would be inequitable and unjust for Defendants to be permitted to retain any of the unlawful proceeds resulting from their fraudulent, illegal, and inequitable conduct.

134. As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair coercion tactics.  Plaintiff and the Class are, accordingly, entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business practices.

## **DAMAGES**

135. As the direct and proximate results of the wrongful acts of Defendants, Plaintiff and the Class have suffered general, special, incidental, and consequential damages as would be anticipated to arise under the circumstances.  In addition, because of the alleged intentional fraud, concealment, misrepresentation, and deceit, Plaintiff and the Class are entitled to punitive damages, which shall be fully proven at the time of trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and those similarly situated, respectfully request that the Court enter judgment against Defendants as follows:

1.  Certification of the Proposed Class, including the appointment of Plaintiff's counsel as class counsel;

2.  An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint pursuant to Vehicle Code § 11709.4 and Civil Code § 2987; Defendants' acts of unfair and unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.

3.  That judgment may be entered in favor of Plaintiff and against Defendants;

4.  That the Court adjudge and decree that Defendants' conduct, deceit, or combination violates the Unfair Competition Law, section 17200, et seq. of the Business & Professions Code;

5.  An award of damages, trebled, in an amount according to proof;

6.  An award of compensatory and punitive damages in an amount to be determined at trial;

7.  An award of restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unjust enrichment, or any acts in violation of state antitrust or consumer protection statutes and laws, including section 17000 of the Business & Professions Code;

8.  An award of pre-and post-judgment interest, and that the interest is awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

9.  For the costs of suit incurred and reasonable attorney's fees; and,

10. That the Court grants other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action which are triable as a matter of right to a jury.


Dated: December 25, 2021


THE LAW OFFICES OF LEON OZERAN


___/s/ Leon Ozeran_____
Leon Ozeran, Esq.,
Attorney for Plaintiff