| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | | JS-6 |

| Case No. | CV 21-9926-DMG (RAOx) | Date | July 15, 2022 |
|---|---|---|---|
| Title | *Allen Ozeran v. BMW of North America, LLC, et al.* | Page | 1 of 6 |

| Present: The Honorable | DOLLY M. GEE, UNITED STATES DISTRICT JUDGE |
|---|---|

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PENDING ARBITRATION [20]**

On December 27, 2021, Plaintiff Allen Ozeran filed a Complaint against Defendants BMW of North America, LLC ("BMW NA") and BMW Financial Services NA, LLC ("BMW FS") in this Court.  Compl. [Doc. # 1].  On February 18, 2022, BMW NA filed a Motion to Compel Plaintiff to submit his claims to arbitration.  Motion to Compel ("MTC") [Doc. # 20].  The MTC is now fully briefed.  [Doc. ## 21 ("Opp."), 22 ("Reply")].  Having duly considered the parties' written submissions, the Court **GRANTS** Defendant's MTC.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2018, an individual named Phillip Stapp leased a 2019 BMW X3 from BMW of Henderson in Henderson, Nevada.  Decl. of Holly Cosart ¶ 5, Ex. A ("Lease Agreement") [Doc. # 20-3].[1]  The Lease Agreement states that the agreement "is entered into between the lessee and co-lessee and the lessor," and that "'I', 'me' and 'my' refer to the Lessee and 'you' and 'your' refer to the Lessor"—BMW of Henderson—"or Lessor's assignee."  Lease Agreement at 7.  The Lease Agreement states that "'Assignee' refers to BMW Financial Services NA. LLC ('BMW FS') or, if this box is checked [x] to Financial Services Vehicle Trust.  BMW FS will administer this lease on behalf of itself or any assignee."  *Id*.  The box is checked to indicate that Financial Services Vehicle Trust ("FSVT") is the Assignee.  *Id*.

The Lease Agreement contains the following arbitration provision:

38. ARBITRATION CLAUSE

PLEASE REVIEW - IMPORTANT - AFFECTS OUR LEGAL RIGHTS

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | CV 21-9926-DMG (RAOx) | Date | July 15, 2022 |
| Title | *Allen Ozeran v. BMW of North America, LLC, et al.* | Page | 2 of 6 |

> NOTICE: Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial.
>
> * * * *
>
> "Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between me and you or your employees, officers, directors, affiliates, successors or assigns, or between me and any third parties if I assert a Claim against such third parties in connection with a Claim I assert against you, which arises out of or relates to my credit application, the lease, purchase or condition of the Vehicle, this Lease, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action.

*Id.* at 12.

On October 8, 2019, Stapp transferred the lease to Plaintiff. *Id.* at ¶¶ 6-9, Ex. B. In a Lease Transfer Agreement, Plaintiff accepted "all" of Stapp's "rights, interest and obligations as set forth in the Lease." *Id.*, Ex. C1 ("Lease Transfer Agreement – Transferee"). An individual apparently consented to the transfer on behalf of BMW FS. *See id.* (showing signature purporting to consent on behalf of BMW FS). BMW FS is a wholly owned subsidiary of BMW NA, and FSVT is a subsidiary of BMW FS. Grener Decl. ¶ 3 [Doc. # 20-2].

In his Complaint, Plaintiff alleges that due to the COVID-19 pandemic, used car prices have increased, allowing lessees to realize a significant profit by selling their leased vehicles to third parties after the lease ends. Compl. at ¶ 23. Plaintiff contracted with Culver City Toyota Dealership to purchase his vehicle, prior to the end of his lease on October 20, 2021, for $31,000, more than the residual value of $27,078.05. *Id.* at ¶ 39. But Plaintiff alleges that, beginning on October 1, 2021, BMW NA and BMW FS began prohibiting sales to third-party dealers. *Id.* at ¶¶ 27-33. Thus, when Culver City Toyota requested payoff instructions from BMW FS on October 15, 2021, BMW FS refused to provide the instructions. *Id.* at ¶ 40. Culver City Toyota rescinded the purchasing contract with Plaintiff. *Id.* at ¶ 41.

Plaintiff alleges that he was deprived of a windfall of nearly $4,000 based on his contract with the Culver Dealer. Compl. at ¶ 48. He filed the instant action on December 27, 2021, on behalf of a proposed class of "[a]ll persons who leased a BMW vehicle with a lease-end date after October 1, 2021." *Id.* at ¶ 63. He alleges five causes of action: (1) interference with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | CV 21-9926-DMG (RAOx) | Date | July 15, 2022 |
|---|---|---|---|
| Title | Allen Ozeran v. BMW of North America, LLC, et al. | Page | 3 of 6 |

potential economic advantage and contractual relations, (2) misrepresentation and deceit, (3) unfair business practices in violation of California's Unfair Competition Law ("UCL"), (4) breach of implied covenant of good faith and fair dealing, and (5) unjust enrichment. *See generally id*. Plaintiff initially asserted his claims against both BMW NA and BMW FS, but he dismissed his claims against BMW FS on February 11, 2022. [Doc. # 19.]

On February 17, 2022, FSVT demanded in writing that Plaintiff submit his claims to arbitration. Rao Decl. ¶ 4 [Doc. # 20-1].

## II.
## LEGAL STANDARD

The FAA provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). "The basic role for courts under the FAA is to determine '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

Federal substantive law governs questions concerning the interpretation and enforceability of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22–24 (1983). Courts apply ordinary state law contract principles, however, "[w]hen deciding whether the parties agreed to arbitrate a certain matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If an arbitration clause is not itself invalid under "generally applicable contract defenses, such as fraud, duress, or unconscionability," it must be enforced according to its terms. *Concepcion*, 563 U.S. at 339. In adjudicating whether parties have agreed to arbitrate, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

## III.
## DISCUSSION

Although BMW NA is not itself a party to Plaintiff's lease, BMW NA argues that it may enforce the arbitration agreement as a third-party beneficiary because it is an "affiliate" of FSVT, the assignee of the lease or, in the alternative, that equitable estoppel requires arbitration. For his part, Plaintiff does not argue that the arbitration agreement is invalid. Instead, he argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| | | | |
|---|---|---|---|
| Case No. | CV 21-9926-DMG (RAOx) | Date | July 15, 2022 |
| Title | *Allen Ozeran v. BMW of North America, LLC, et al.* | Page | 4 of 6 |

BMW NA lacks standing to invoke the arbitration agreement. Opp. at 7; *see Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) ("The right to compel arbitration stems from a contractual right . . . [that] may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration."). Plaintiff also argues that the arbitration clause does not encompass BMW NA's new policy limiting the sale of leased vehicles to third parties. Opp. at 4.

A non-signatory can enforce an arbitration agreement as a third-party beneficiary under "ordinary contract and agency principles," including "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citations omitted). "[T]he third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Id.* at 1102 (quoting *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 2000)).

The Lease Agreement provides for arbitration of certain "claims," and defines a claim as "any claim, dispute or controversy ... between me and you or your ... affiliates." Lease Agreement at 12. BMW NA argues that it is an affiliate of FSVT because FSVT is a subsidiary of BMW FS and BMW FS is a wholly owned subsidiary of BMW NA. Thus, BMW NA contends, Plaintiff's claims against it must be arbitrated.

A number of other courts, including this one, have concluded that BMW FS is an "affiliate" of BMW NA and thus claims against BMW NA must be arbitrated under similar provisions. *See, e.g.*, *Collins v. BMW of N. Am., LLC*, No. 20-cv-1635-GPC (AGS), 2021 WL 242938, at *3 (S.D. Cal. Jan. 25, 2021) (collecting cases and concluding BMW NA is an affiliate of BMW FS, and may enforce an arbitration clause providing for arbitration of disputes between a car purchaser and the "affiliates" of BMW FS); *see also Edry v. BMW of N. Am. LLC*, No. CV 20-826-DMG (MAAx), 2020 WL 12918142, at *3 (C.D. Cal. Sep. 8, 2020) (granting BMW NA's motion to compel arbitration based on an almost identical arbitration clause in agreement between lessee and BMW FS, where evidence showed BMW FS was a wholly owned subsidiary of BMW NA).

BMW FS itself is not, however, a party to Plaintiff's lease; the assignee is FSVT. FSVT is an additional step removed from BMW NA, and although evidence shows that FSVT is a "subsidiary" of BMW FS, the evidence does not show that FSVT is wholly-owned by BMW FS, nor that BMW FS is a manager of FSVT. *Cf. Collins*, 2021 WL 242938, at *4 (concluding that BMW NA is an affiliate of BMW FS "[b]ecause BMW FS is a wholly owned subsidiary of BMW NA, and BMW NA is a Manager of BMW FS"). Other courts have reasoned persuasively

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

JS-6

| Case No. | CV 21-9926-DMG (RAOx) | Date | July 15, 2022 |
|---|---|---|---|

| Title | Allen Ozeran v. BMW of North America, LLC, et al. | Page | 5 of 6 |
|---|---|---|---|

that BMW NA is not an intended third-party beneficiary of similar agreements with FSVT. *See, e.g.*, *Lap-ping Chen v. BMW of N. Am., LLC*, No. CV 21-03531-DMR, 2021 WL 3604691, at *4 (N.D. Cal. Aug. 13, 2021) (denying BMW NA's attempt to invoke arbitration provision as third-party beneficiary of agreement between purchaser and FSVT); *accord In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 470 F. Supp. 3d 1117, 1124 (C.D. Cal. 2020) (rejecting argument that parent company of parent company was an "affiliate" within the meaning of a similar contract provision). On the whole, the Court concludes that BMW NA's bare assertion that FSVT is a "subsidiary" of BMW FS, without more evidence about the relationship, is insufficient to show that BMW NA is an affiliate of FSVT. BMW NA thus lacks standing to invoke the arbitration provision as an "affiliate" of BMW NA.

BMW NA also seeks to invoke arbitration pursuant to the doctrine of equitable estoppel. Equitable estoppel allows a non-signatory to compel a signatory plaintiff to arbitration:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and
>
> (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 948–49 (9th Cir. 2022) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013)). The doctrine prevents a plaintiff from "hold[ing] a non-signatory liable for obligations imposed by an agreement" while at the same time seeking to avoid other terms of the agreement. *Ngo*, 23 F.4th at 949.

The crux of Plaintiff's Complaint is that FSVT refused to allow Plaintiff to contract with another dealership to pay off the remainder of his lease. Plaintiff alleges that FSVT and BMW NA "concocted" this "scheme" in order to maintain inventory at BMW dealerships, and asserts his claims against BMW NA as the progenitor of the policy that led to FSVT's refusal to comply with the lease.[2] It is clear from both Plaintiff's Complaint and his Opposition to the MTC that Plaintiff's claims are "intimately founded in and intertwined with" the lease itself. *See* Opp. at

---

[2] The Court acknowledges that Plaintiff alleges in his Complaint that BMW FS, not FSVT, entered into this "scheme" with BMW NA, and that *BMW FS* breached its obligations under the lease. But as discussed *supra*, BMW FS was not a party to the lease—FSVT was. The Court thus substitutes FSVT for BMW FS in its analysis.

| | | |
|---|---|---|
| | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>CIVIL MINUTES—GENERAL | JS-6 |
| Case No. | CV 21-9926-DMG (RAOx) | Date  July 15, 2022 |
| Title | *Allen Ozeran v. BMW of North America, LLC, et al.* | Page  6 of 6 |

10 (describing FSVT's obligations under the terms of the Lease Agreement as central to his claims against BMW NA).

The nature of Plaintiff's claim distinguishes this action from both *Ngo* and *Kramer*, and indeed from all the cases against BMW NA cited herein: in those actions, the plaintiffs asserted claims against car manufacturers based on alleged defects in the cars themselves. Here, Plaintiff's claims are directed at FSVT's purported noncompliance with the terms of the lease, and relate exclusively to obligations that arose out of the lease. *See In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) ("[F]or equitable estoppel to apply, [the plaintiff's] claims against [the non-signatory] must rely on the terms of the [. . . a]greement."). The Court thus concludes that Plaintiff's claims are subject to arbitration under the doctrine of equitable estoppel. For the same reason, the Court concludes that Plaintiff's claims "arise[] out of . . . the Lease," and thus come within the scope of the lease's arbitration provision.

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** BMW NA's MTC. The Court hereby **STAYS** the proceedings in this case pursuant to 9 U.S.C. section 3. The case shall be administratively closed for the duration of the stay. The parties shall file a joint status report with the Court within 10 days after the conclusion of any arbitration proceedings or the resolution of the parties' dispute.

**IT IS SO ORDERED.**